No. 99-494

IN THE SUPREME COURT OF THE STATE OF MONTANA

2000 MT 261

STATE OF MONTANA,

Plaintiff and Respondent,

v.

ANTHONY GORDON PRITCHETT,

Defendant and Appellant.

APPEAL FROM: District Court of the Eleventh Judicial District,

In and for the County of Flathead,

The Honorable Katherine Curtis, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Todd D. Glazier, Attorney at Law, Boise, Idaho

David F. Stufft, Attorney at Law, Kalispell, Montana

For Respondent:

Hon. Joseph P. Mazurek, Attorney General; John Paulson,

Assistant Attorney General; Helena, Montana

Thomas J. Esch, County Attorney, Kalispell, Montana

Submitted on Briefs: February 24, 20000
Decided: September 28, 2000

Filed:

_____

Clerk

Justice W. Wlliam Leaphart delivered the Opinion of the Court.

¶1 On February 11, 1999, Anthony Gordon Pritchett (Pritchett) pled guilty to one count of burglary in the Eleventh Judicial District Court. He was sentenced to twenty years in the Montana State Prison with all twenty years suspended upon the condition that he pay restitution in the amount of $62,383.72. Pritchett appeals both the restitution order and the length of his sentence. We vacate the sentence and remand for additional proceedings consistent with this opinion.

Factual Background

¶2 On the night of October 1, 1998, Pritchett entered the garage of his former employer, Kit Hunter (Hunter) in an attempt to return two hunting rifles he had stolen and pawned to support his gambling habit. At some point, Pritchett stumbled and dropped his flashlight. Unable to locate it in the dark, he lit his cigarette lighter. The flame ignited gas leaking from a nearby propane bottle, causing a large explosion and a fire that destroyed the garage and its contents. Pritchett, despite serious injuries sustained in the blast, fled the scene. Later, when he learned that the police were investigating him, Pritchett returned and confessed his involvement in the crime.

¶3 Following Pritchett's guilty plea, the District Court scheduled a sentencing hearing and ordered the local probation officer to prepare a Presentence Investigation Report (PSI). On the question of restitution, the completed report noted the loss of the Hunters' garage and its contents and stated that "the total restitution to be paid by the Defendant is $63,569.25."[1] This amount included $15,000 for the garage and $48,569.25 for its contents. The report listed Pritchett's income as $1,000 per month--all derived from self employment as a carpenter. It provided no documentation or evidence to support these amounts. The PSI also did not include any documentation of Pritchett's current assets and liabilities or any estimates of his future ability to pay restitution. Noting that the amount of restitution was "enormous," the probation/parole officer who prepared the PSI stated that: "To give the Defendant adequate time to pay off the restitution in this case the Officer

recommends a twenty (20) year sentence to the Montana State Prison, with all of the time suspended."

## Discussion

¶4 Did the District Court err in sentencing Pritchett to pay restitution?

¶5 Pritchett argues § 46-18-242(1), MCA, specifically mandates that, prior to an order of restitution, a district court must order the probation officer to document the defendant's financial resources, future ability to pay restitution and the victim's pecuniary loss. While the District Court received some evidence of these amounts during its sentencing hearing, Pritchett asserts that this fact does not negate the specific mandate of § 46-18-242(1), MCA, and that, absent this documentation, the District Court had no authority to impose a sentence of restitution. We agree.

¶6 This Court reviews a criminal sentence for legality only. State v. Montoya, 1999 MT 180, ¶ 15, 295 Mont. 288, ¶ 15, 983 P.2d 937, ¶ 15. Thus, our review is confined to whether the sentence is within the parameters provided by statute. *Montoya*, ¶ 15.

¶7 Sentencing courts are required to impose a sentence that includes payment of full restitution whenever they find that the victim of an offense has sustained a pecuniary loss. Section 46-18-201(5), MCA. However, this general mandate is subject to the detailed procedures and qualifications found in §§ 46-18-241 to 249, MCA. District courts are not authorized to impose a sentence of restitution until all these additional statutory requirements are satisfied. *See* State v. Hilgers, 1999 MT 284, ¶ 8, 297 Mont. 23, ¶ 8, 989 P.2d 866, ¶ 8.

¶8 Particularly relevant to the case at hand is the provision designed to ensure that restitution orders are based on documented evidence of the victim's loss and the offender's ability to pay. Section 46-18-242, MCA, provides;

> (1) Whenever the court believes that a victim of the offense may have sustained a pecuniary loss as a result of the offense or whenever the prosecuting attorney requests, the court shall order the probation officer, restitution officer, or other designated person to include in the presentence investigation and report:

> (a) documentation of the offender's financial resources and future ability to pay

restitution; and

(b) documentation of the victim's pecuniary loss . . . .

¶9 This provision requires that the PSI contain documentary evidence. State v. Brown (1994), 263 Mont. 223, 226, 867 P.2d 1098, 1100. In *Brown*, we held that a PSI containing only conclusory statements about amounts and no documentation regarding the defendant's future ability to pay restitution did not comply with § 46-18-242(1), MCA, and that, "without the documentation required by the statute, a district court is unable to make a meaningful determination of the propriety or amount of a restitution provision in a sentence." *Brown*, 263 Mont. at 227, 867 P.2d at 1101.

¶10 The State, carefully extracting some wording from our holding in *Hilgers*, argues that failure to satisfy the statutory requirement for documentation does not invalidate a restitution order-so long as the District Court, as it did in this case, holds a full evidentiary hearing on the amount of the pecuniary loss. The State's reliance on *Hilgers* is misplaced.

¶11 In *Hilgers*, the PSI did not document the amount of the victim's pecuniary loss, the defendant's financial resources or his ability to pay restitution. We held that the failure to document pecuniary loss was not fatal because it was later documented at a full evidentiary hearing. *Hilgers*, ¶ 9. However, in *Hilgers*, we based our holding on the existence of a plea agreement providing that, if the parties were unable to agree to the amount of restitution, the defendant would allow the court to make the determination. *Hilgers*, ¶ 9. Unlike *Hilgers*, Pritchett made no plea agreement allowing the District Court to determine the amount of restitution.

¶12 With regard to the other requirements of § 46-18-242, MCA, we went on to hold in *Hilgers* that "the absence of documentation on [Hilgers' financial resources and future ability to pay] as required under § 46-18-242(1)(a), MCA, renders the District Court's judgment illegal." *Hilgers*, ¶ 14.

¶13 We conclude, therefore, as we did in *Brown* and *Hilgers*, that failure of the PSI to document the victim's pecuniary loss, Pritchett's financial resources, and his future ability to pay restitution, renders the District Court's judgment illegal.

¶14 In addition to documentation of the information required by § 46-18-242(1), MCA, a district court imposing a sentence of restitution is required to specify the amount, method

and time of each payment to the victim. Section 46-18-244(1), MCA. In doing so, the court must consider the financial resources and future ability of the offender to pay. Section 46-18-244(2), MCA. Pritchett argues that the District Court failed to specify the amount, method and time of each payment he was to make to the victim and that this failure to comply with statutory requirements invalidates the court's restitution order. We agree.

¶15 As stated above, the district court's authority to impose a sentence of restitution is limited by the provisions of §§ 46-18-241 through 249, MCA. Section 46-18-244, MCA, provides in part:

> (1) The court shall specify the amount, method, and time of each payment to the victim and may permit payment in installments.

The District Court failed to comply with this requirement. Rather, it ordered that "payments on restitution are to be made . . . according to a schedule to be determined by his Probation Officer. . . ."

¶16 Section 46-18-244, MCA, clearly requires the court to specify the amount, method and time of payments. By leaving this determination to the discretion of the probation officer, the District Court failed to comply with the sentencing parameters provided by statute.

¶17 Did the District Court err when it used replacement cost instead of actual market value to determine the amount of restitution?

¶18 Determination of the appropriate measure of restitution is a question of law. The standard of review of a district court's conclusions of law is whether the court's interpretation of the law is correct. Carbon Co. v. Union Reserve Coal Co. (1995), 271 Mont. 459, 469, 898 P.2d 680, 686.

¶19 Pritchett argues that, by law, the appropriate measure of the Hunters' pecuniary loss is the *market value* of their property at the time of its destruction. The Hunters, however, estimated the value of their lost property as the cost of replacing it with *new items at current prices*. Pritchett argues that, in adopting the Hunters' replacement valuation method, the District Court made an error of law that resulted in a significant over-statement of his restitution obligation. We agree.

¶20 Restitution is limited to the pecuniary loss resulting from the offense. Section 46-18-244(2), MCA. Pecuniary loss is defined by statute as "all special damages . . . that a person could recover against the offender in a civil action arising out of the facts or events constituting the offender's criminal activities." Section 46-18-243(1)(a), MCA. Pritchett argues, and the State seems to agree, that the appropriate civil action arising out of Pritchett's destruction of the Hunters' garage and its contents would be an action for conversion. The loss caused by the wrongful conversion of personal property is presumed to be the value of the property at the time of its conversion. Section 27-1-320(1), MCA.

¶21 Both parties acknowledge that the Hunters lost a number of irreplaceable personal items with great sentimental value. However, during the sentencing hearing the State submitted, as evidence of the Hunters' *pecuniary loss*, a specific and extensive list compiled by the Hunters for insurance purposes. The list included a description of each item destroyed in the fire along with its value. It is clear from a cursory review of the list and the transcript of the hearing that the value assigned by the Hunters for each item was the replacement cost for a new item:

> Q. [Mr. Stufft - Pritchett's Attorney] When you prepared your list, you went and tried to find out what the new cost would be or the replacement value would be for the item; is that correct?
>
> A. [Kit Hunter] That's correct.

¶22 The Hunters also listed, as part of their loss, the $15,000 replacement cost of the garage, despite testimony that it was valued for tax purposes at only $3,640. Except for the addition of $250 for an item left off the list and the deletion of some duplicated items, the District Court wholly adopted the list as a statement of the Hunters' pecuniary loss.

¶23 The loss of the garage and its contents are certainly "pecuniary losses" for the purposes of determining restitution. However, in this case, the dollar value of that loss must be measured by the actual value of the property at the time the loss occurred. By adopting a valuation based on the cost of a new item-rather than the market value of the actual items prior to their destruction--the District Court may have significantly overstated the "full restitution" that Pritchett must pay.

¶24 Where personal property is converted, restitution must be based on the market value of the goods converted. We hold that the District Court, in using the replacement cost of

items destroyed, used an incorrect measure to determine the amount of Pritchett's restitution.

¶25 Did the District Court's sentence violate Pritchett's right to due process under Article II, Section 17 of the Montana Constitution?

¶26 The District Court sentenced Pritchett to a suspended sentence of twenty years--the maximum allowable punishment for burglary. Pritchett contends that the court based the length of his sentence on the time it would take him to make restitution given his limited financial resources. He argues that, in basing his sentence on his indigency, the District Court violated his constitutional right to due process. We agree with both his factual analysis and his conclusion of law.

¶27 Our review of constitutional questions is plenary. State v. Anderson, 1998 MT 258, ¶ 6, 291 Mont. 242, ¶ 6, 967 P.2d 413, ¶ 6.

¶28 Article II, Section 17 of the Montana Constitution provides that: "No person shall be deprived of life, liberty, or property without due process of law." We have previously considered the application of Montana's Due Process Clause in the context of a sentence of restitution based on indigency. *See* State v. Farrell (1984), 207 Mont. 483, 676 P.2d 168. In *Farrell*, we held that a criminal defendant's right to due process requires that "indigency or poverty not be used as the touchstone for imposing the maximum allowable punishment." *Farrell*, 207 Mont. at 499, 676 P.2d at 177.

¶29 In *Farrell*, the defendant was convicted of theft of public assistance funds and sentenced to ten years, all suspended. *Farrell*, 207 Mont. at 487, 676 P.2d at 171. Among other things, suspension of the sentence was conditioned on payment of restitution. *Farrell*, 207 Mont. at 487, 676 P.2d at 171. On appeal, the defendant challenged the constitutionality of the length of his sentence, alleging that he was only sentenced to the maximum time allowed by law because he was indigent. *Farrell*, 207 Mont. at 493-94, 676 P.2d at 174-75. As evidence of the defendant's allegation, he set forth a colloquy in which the judge clearly indicated that he was sentencing the defendant to ten years because he did not think the defendant could pay the restitution in less than that amount of time. *Farrell*, 207 Mont. at 494, 676 P.2d at 174. After discussing the application of the equal protection and due process clauses, this Court concluded--under a due process analysis--that it was arbitrary and unfair to subject a defendant to the maximum sentence simply because he may not be able to pay the restitution in less than that amount of time.

*Farrell*, 207 Mont. at 498, 676 P.2d at 176-77. We ultimately vacated the defendant's ten-year suspended sentence and remanded for further proceedings.

¶30 The question before us, then, is whether the District Court based Pritchett's sentence on the length of time he would need to pay restitution. We find substantial evidence in the record that it did. Our holding in *Farrell* clearly applies and the sentence must be overturned as a violation of Pritchett's right to due process.

¶31 Admittedly, the facts in this case are not so clear as they were in *Farrell*. Unlike the court in *Farrell*, the District Court never explicitly stated that the length of Pritchett's sentence was based on the amount of time he would need to pay restitution. In fact, as the State points out in its brief, the District Court stated that the sentence was based on Pritchett's juvenile record and the nature of the offense.

¶32 In the eighth grade Pritchett was charged with writing forged checks on his parents' account. Pritchett also reported a felony theft when he was sixteen that resulted in his placement at the Pine Hills School and Swan River Youth Forest Camp until the age of eighteen. In the twenty years between this juvenile theft and the present burglary conviction, Pritchett's only offense was a 1994 citation for failure to carry liability insurance.

¶33 Even crediting Pritchett for this "not insignificant period of time as an adult" during which he remained law-abiding, the District Court determined that a twenty-year sentence was appropriate because of Pritchett's failure to learn from his past mistakes and "because of the position of trust he violated as a result of having committed this offense and of course the significant harm imposed as a result of his offense."

¶34 We conclude that the "significant harm," cited by the District Court as the rationale for the sentence, was the pecuniary loss suffered by the Hunters. First, the PSI explicitly recommended a twenty-year suspended sentence so that the defendant would have enough time to pay restitution. The District Court adopted the length, conditions and restitution amount of this recommendation exactly as proposed by the probation officer. In addition, statements by the court during the sentencing hearing link the term of the sentence and Pritchett's ability to complete his restitution obligation. The District Court stated:

> 20 years is a long time and I think that the Hunters deserve for you to make every effort you can over that period of time to make them whole from this crime.

Nobody is going to put you in prison for not being able to do that as long as you make your best effort, but that's what you owe to them and that's what you owe to the court and that's what you owe to the community.

So it's the order of the court that the defendant be sentenced to Montana State Prison for a period of 20 years, with all of that time suspended.

¶35 We find that, while the District Court did not expressly state that it was sentencing Pritchett to the maximum term to provide sufficient time for him to pay the ordered restitution, there is sufficient evidence in the record to conclude that the length of the sentence was, nonetheless, based on Pritchett's indigency.

¶36 While a reasonable suspended sentence coupled with full restitution is appropriate in this case, that fact does excuse the District Court's failure to comply with statutory requirements for imposing a sentence of restitution. Furthermore, the District Court's use of replacement value of property destroyed--rather than its actual market value at the time of the fire--to measure the Hunters' pecuniary loss is an error of law which may have significantly overstated Pritchett's restitution obligation.

¶37 Finally, we find that the District Court sentenced Pritchett to the maximum term allowed by law because, given his limited financial resources, no shorter time would allow him to pay the court-ordered restitution. We hold, as we did in *Farrell*, that, in basing the term of his prison sentence on the defendant's indigency, the District Court violated Pritchett's rights to due process under Article II, Section 17 of the Montana Constitution.

¶38 Therefore, we vacate the District Court's Judgment and Sentence and remand for further proceedings consistent with this opinion.

/S/ W. WILLIAM LEAPHART

We concur:

/S/ J. A. TURNAGE

/S/ KARLA M. GRAY

/S/ JAMES C. NELSON

## /S/ JIM REGNIER

1. This amount was later reduced to $62,383.72 to reflect adjustments in the final list of items destroyed in the fire.